IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:06cr173-MHT |
| TANESHIA MICHELLE LAWSON | ) | (WO) |

OPINION AND ORDER

Defendant Taneshia Michelle Lawson was indicted on
two counts, one for conspiracy to commit theft of
government property and the other for theft of government
property, for having allegedly cashed someone else's
Social Security check as her own in 2003.  This criminal
case is before the court on the government's motion <u>in
limine</u> to exclude psychiatric testimony reflecting, among
other things, that Lawson is "within the upper limits of
the mild range of mental retardation."  Psych. Report at
5.  Lawson argues that, because of her mental retardation
and other attendant mental-health difficulties, she did

not have the <u>mens rea</u> (that is, the specific intent) required to steal government property or conspire to do so.  She adds that, while with this evidence she does seek to put before the jury the condition of her mental health, she does not assert the affirmative defense of insanity.  For the reasons that follow, the government's motion will be granted.


                          I.

    As stated, Lawson has been indicted on two counts of conspiracy and theft of government property for having allegedly cashed someone else's Social Security check. She filed notices, pursuant to Fed. R. Crim. P. 12.2(b),[1]

_____

    1.  Fed.R.Crim.P. 12.2 provides, in part, that:

        "(a) Notice of an Insanity Defense.  A defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided for filing a pretrial motion, or at any later time the court sets, and file a copy of the notice with the clerk.  A defendant who
                              (continued...)

informing the government and this court that at trial she may rely upon "a defense of diminished mental capacity."[2]

_____

1.    (...continued)
fails to do so cannot rely on an insanity defense. The court may, for good cause, allow the defendant to file the notice late, grant additional trial-preparation time, or make other appropriate orders.

"(b) Notice of Expert Evidence of a Mental Condition.    If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must--within the time provided for filing a pretrial motion or at any later time the court sets--notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.    The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders."

2.    Lawson filed her first notice "pursuant to Fed. R. Crim. P. 12.2, inform[ing] the government and this Court that at trial she may rely upon a defense of diminished mental capacity."    In her second notice she clarified that her earlier filing was intended to give
(continued...)

The government responded with a motion to exclude any psychiatric evidence as inadmissible to support a 'diminished mental capacity' defense.

---

2.  (...continued)
notice of expert testimony pursuant to Rule 12.2(b).  <u>See supra</u> note 1.

On July 26, 2006, the magistrate judge issued an order on arraignment that required that Lawson file "all notices under Fed.R.Crim.P. ... 12.2 ... no later than August 16, 2006."  With trial set for October 30, Lawson's first notice was not filed until October 19, and her second notice was not filed until October 26.  Both notices are, therefore, on their face untimely. Therefore, in addition to the current motion before the court, the government filed a motion to strike Lawson's first notice as untimely, and Lawson's second notice was accompanied by a motion to permit its late filing for good cause.

However, Rule 12.2 permits a late filing for "good cause," and Lawson states that there is "good cause" for filing the notices late, in that defense counsel first learned of Lawson's possible mental limitations somewhat recently, at which point counsel arranged for a psychological evaluation.

Because by this order the court has disallowed Lawson's expert testimony of diminished mental capacity, the court has, in a separate order entered today, denied as moot both the government's motion to strike and Lawson's motion to permit late filing.

4

## II.

At the outset, it is important to distinguish between two kinds of mental-health-related defenses: (1) the insanity defense, and (2) the defense of diminished mental capacity.  The insanity defense is an <u>affirmative defense</u> as that term is traditionally understood in the criminal law.  It presupposes that the government can prove the elements of the offense beyond a reasonable doubt, but it then affirmatively excuses the defendant's otherwise criminal behavior.  The defendant's conduct is said to have met all the elements of the offense, but on account of a mental disease or defect the defendant is relieved of responsibility for it.  Under the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4247, a defendant is entitled to a special verdict of not guilty by reason of insanity if, after the government proves all the elements of the charged offense beyond a reasonable doubt, the defendant then proves by clear and convincing evidence that, "as a result of a severe mental

disease or defect, [she] was unable to appreciate the nature and quality or wrongfulness of his acts." 18 U.S.C. § 17.

The defense of diminished mental capacity, in contrast, is not an affirmative defense at all, but rather a <u>defense theory</u> that challenges the government's ability to prove a necessary element--specifically, the <u>mens rea</u> element--of the offense. Where the law requires that a defendant have a mental state of 'specific intent' in order to be guilty of the offense, evidence that the defendant suffered from diminished mental capacity at the time of the offense, if believed by the factfinder, serves to negate the <u>mens rea</u> element of the crime. If successful, the diminished-mental-capacity approach defeats the government's effort to prove every element of the offense beyond a reasonable doubt, by demonstrating that the defendant did not, at the time of the offense, have the specific intent required to commit the crime.

The Eleventh Circuit has recognized this distinction and has summarized it as follows: "'Affirmative defense' evidence of mental impairment, when specifically recognized and defined by the legislature, must be raised by the defendant and can 'justify' or 'excuse' conduct that is otherwise criminal." United States v. Cameron, 907 F.2d 1051, 1063 (11th Cir. 1990) (internal citation omitted). "Psychological evidence that aids the trier in determining the defendant's specific state of mind with regard to the actions she took at the time the charged offense was committed, by contrast," the court added, "is not an affirmative defense but is evidence that goes specifically to whether the prosecution has carried its burden of proving each essential element of the crime--at least when specific intent is at issue." Id.

III.

In Cameron, the Eleventh Circuit held that the Insanity Defense Reform Act, which codifies and limits

7

the insanity defense in federal criminal trials, does not operate to prohibit the defendant from introducing psychiatric evidence to rebut the mental-state element of the offense charged. 907 F.2d at 1066. The Cameron court determined that, although the statute, in defining the affirmative defense of insanity, states that "mental disease or defect does not otherwise constitute a defense," 18 U.S.C. § 17(a) (emphasis added), this statement limits only the definition of the affirmative defense, and does not limit the defendant's right to defeat the mental-state element of the offense by asserting psychiatric or mental infirmities. The Eleventh Circuit's reading of statute is in line with that of her sister circuits. See United States v. Dupre, 462 F.3d 131, 137 & n.8 (2d Cir. 2006); United States v. Brown, 326 F.3d 1143, 1147 (10th Cir. 2003); United States v. Worrell, 313 F.3d 867, 874 (4th Cir. 2002); United States v. Schneider, 111 F.3d 197, 201 (1st Cir. 1997); United States v. Bartlett, 856 F.2d 1071, 1081-82

(8th Cir. 1988); <u>United States v. Twine</u>, 853 F.2d 676, 679 (9th Cir. 1988); <u>United States v. Pohlot</u>, 827 F.2d 889, 890 (3d Cir. 1987).

In this case, Lawson has informed the United States and the court that she may rely upon a defense of diminished mental capacity.  Under the precedent of this circuit, as established in <u>Cameron</u>, she is not categorically prohibited from employing that defense. The government concedes that the offenses with which Lawson is charged are specific-intent crimes.  Therefore, if Lawson is able to marshal evidence that, because of a mental infirmity, she lacked the specific intent to commit these crimes at they were committed, then that evidence is admissible for consideration by the jury. The burden remains with the government at all times to prove beyond a reasonable doubt that Lawson had the <u>mens rea</u>, specific intent, required by law as an element of the crimes.

IV.

Although the diminished-mental-capacity defense is theoretically possible, the government argues that it should not be allowed in this case because Lawson's psychiatric evidence does not support it.  In support of its argument, the government has submitted to the court a copy of Lawson's psychological evaluation.


A.

The Eleventh Circuit, in holding that psychiatric evidence is admissible to negate specific intent, was careful to place strict limits on the kind of evidence that could support such a defense theory.  Psychiatric evidence tending to negate specific intent must show not merely that the defendant was unable to reflect properly on, or control, her actions or motivations; "a lack of conscious self-reflection does not mean a lack of intent. Cameron, 907 F.2d at 1066 n.30.  Rather, the psychiatric evidence must focus on the defendant's specific state of

10

mind at the time of the offense and show that, because of the defendant's mental condition, she did not have the specific intent necessary to commit the crimes charged. <u>Id</u>. at 1067.

"Only in the rare case" will a defendant be so incapacitated by mental disease or defect so as to negate the <u>mens rea</u> element of the crime. <u>Cameron</u>, 907 F.2d at 1066. Indeed, as Judge Becker stated on behalf of the Third Circuit Court of Appeals, "Only in the rare case ... will <u>even a legally insane defendant</u> actually lack the requisite mens rea purely because of mental defect." <u>United States v. Pohlot</u>, 827 F.2d 889, 900 (3rd Cir. 1987) (emphasis added). He explained that:

> "Mental illness rarely, if ever, renders a person incapable of understanding what he or she is doing. Mental illness does not, for example, alter the perception of shooting a person to that of shooting a tree. Similarly, a man who commits murder because he feels compelled by demons still possesses the mens rea required for murder. The government's burden of proving mens rea is therefore considerably less onerous than its previous burden of proving sanity."

11

Id. (citation and quotation marks omitted).  The court knows of no reason why these observations on mental illness should not apply with equal force to someone who is "within the upper limits of the mild range of mental retardation," Psych. Report at 5, as Lawson is.

It is easy to understand why psychiatric evidence must be limited.  If the defendant were permitted to introduce evidence of general mental-health maladies in an attempt to negate the mens rea element of a specific intent crime, this would be little more than a backdoor entrance for a form of insanity defense excluded by Insanity Defense Reform Act.  Cameron, 907 F.2d at 1066. The jury, rather than focusing on whether the defendant formed the requisite specific intent, could be misled into excusing criminal conduct based on evidence that the defendant suffered from mental abnormalities not excused by the statute.

Recently, the Supreme Court recognized that this was a risk inherent in the insanity-and-mens rea dichotomy.

In <u>Clark v. Arizona</u>, 548 U.S. ___, 126 S.Ct. 2709 (2006),
the Court upheld the State of Arizona's rule
categorically prohibiting the defense from introducing
evidence of mental illness to negate the <u>mens rea</u> element
of the offense.  In part, the Court stated that the State
was justified in excluding such evidence based on the

> "potential of mental-disease evidence to
> mislead jurors ... through the power of
> this kind of evidence to suggest that a
> defendant suffering from a recognized
> mental disease lacks cognitive, moral,
> volitional, or other capacity, when that
> may not be the case at all. ... [I]t is
> very easy to slide from evidence that an
> individual with a professionally
> recognized mental disease is very
> different, into doubting that he has the
> capacity to form <u>mens rea</u>, whereas that
> doubt may not be justified."

126 S.Ct. at 2734-35.  The Court's holding, of course,
does not affect the general admissibility of such
evidence under the federal statute; it simply approves
the State of Arizona's rule excluding it in its state
criminal proceedings.  But the Court's commentary on the
tendency of mental-health evidence to mislead the jury

13

does speak to the trial court's gatekeeping function in excluding psychiatric evidence not directly focused on the mens rea element of the charged offense.

"Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of mens rea, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, ... district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of mens rea." Cameron, 907 F.2d at 1067 (internal quotation marks omitted). "[S]uch evidence should be evaluated outside the presence of the jury." Id.

## B.

As stated, Lawson argues that, because of her mental retardation and other attendant mental difficulties, she

14

did not, at the time of the offense, have the specific intent required to steal government property or conspire to do so, and that the expert testimony she intends to introduce will assist the jury in determining whether that is so.

The court, having reviewed the psychological report, agrees with the government that its contents do not support a legally acceptable theory of lack of <u>mens rea</u>. The general focus of the psychological report is on Lawson's limited cognitive abilities in terms of arithmetic and vocabulary, and her limited understanding of the world around her. The report concludes that she has an IQ low enough to place her "within the upper limits of the mild range of mental retardation." Psych. Report at 5. The report also makes note of some other mental-health difficulties, such as her low self-esteem, difficulty in making decisions, anxiety and phobias, and introversion.

15

Nothing in the report indicates that Lawson suffered from any mental disease or defect that would support the conclusion that she lacked, at the time of the offense, the specific intent to steal and convert Social Security checks or conspire with others to do so.  In fact, while the report reflects that she is "within the upper limits of the mild range of mental retardation," Psych. Report at 5, it also states that she explained to her examiner "that she was on the streets and needed money," and "[t]he need for money was the cause of her cashing the check." Id. at 1.  This appreciation, as articulated by Lawson in the report, of the specific intent behind her conduct completely defeats her mens rea defense theory.

Lawson cites United States v. Childress, 58 F.3d 693 (D.C. Cir. 1995) (per curiam), where the D.C. Circuit Court of Appeals found that the defendant, who was retarded, had "presented evidence of mental incapacity severe enough that it might well be highly relevant to [his] capacity to entertain, and whether he did in fact

16

entertain, specific intent to further the purposes of the conspiracy."  58 F.3d at 729.

This court agrees that a defendant's mental retardation could, in certain circumstances, negate the mens rea element of a specific intent crime, insofar as, for example, the criminal activity was too complex for the defendant to intend specifically to carry it out.  But in Childress, the case was remanded because the district court had imposed a "categorical bar on evidence regarding mental capacity," and the court of appeals deemed it proper that the district court "assess[] ... the reliability and probity of the evidence" prior to excluding it.  Id. at 730.

This court, in contrast to the trial court in Childress, imposes no categorical bar on the diminished-mental-capacity defense.  Rather, the court has reviewed the psychological report and finds that it is not nearly probative enough on the issue of Lawson's mental state at the time of the offense to warrant consideration by a

17

jury.  The report offers no opinion on whether, because
of Lawson's low IQ, she lacked the specific intent to
commit the crimes with which she is charged.  In other
words, the  report, which is all the parties have
submitted as evidence, is not "adequately keyed to the
issue of whether  [s]he entertained the <u>mens rea</u> required
for proof of the crime."  <u>Childress</u>, 58 F.3d at 729.

        In fact, with her general and broad reliance on the
expert's conclusion that she is "within the upper limits
of the mild range of mental retardation," Psych. Report
at 5, and suffers from other attendant mental-health
difficulties, Lawson is asking this court to march down
the same improper path the trial court did in <u>Childress</u>,
albeit from the opposite direction.  She asks that this
court essentially impose a 'categorical allowance' on
evidence of mental retardation.  A 'categorical allowance'
is just as improper as a 'categorical bar,' for both are
unkeyed to the issue of whether the defendant had the <u>mens</u>
<u>rea</u> required for proof of the crime.

Furthermore, the nature of the crime charged here does not appear to require the workings of a sophisticated mind.  It is not difficult to conceive of a person with mild retardation specifically intending to agree with others to steal a Social Security check, and then doing so.

In sum, because Lawson has given the court no indication that she intends to introduce evidence that directly bears on whether she possessed the requisite mental state for the crimes with which she is charged; because her general psychiatric evidence of her low IQ or other cognitive difficulties would present an inherent danger that it would distract the jury from focusing on the actual presence or absence of mens rea; and because such general psychiatric evidence would easily slide into wider usage that opens up the jury to theories of defense more akin to justification when no such defense is

19

properly before the court, the court holds that she should

not be permitted to introduce such evidence.[3]

_____

    3.  Judge Becker aptly notes in <u>Pohlot</u> that the
concept of diminished capacity has two strains:

> "The first variant of what courts have
> called 'diminished capacity' defenses
> inappropriately is the evidentiary
> doctrine which we have already noted is
> not a defense at all but merely a rule
> of evidence; specifically, the admission
> of evidence of mental abnormality to
> negate mens rea.
>
> "A second strain of diminished capacity
> permits a defendant to show not only
> that he lacked the mens rea in the
> particular case but also that he lacked
> the <u>capacity</u> to form the mens rea.
> Whether a defendant has the capacity to
> form mens rea is, of course, logically
> connected to whether the defendant
> possessed the requisite mens rea.
> Commentators have agreed, however, that
> only in the most extraordinary
> circumstances could a defendant actually
> lack the capacity to form mens rea as it
> is normally understood in American law.
> ... Even the most psychiatrically ill
> have the capacity to form intentions,
> and the existence of intent usually
> satisfies any mens rea requirement.
> Commentators have therefore argued that
> permitting evidence and arguments about
> a defendant's capacity to form mens rea

(continued...)

* * *

Accordingly, it is ORDERED that the government's motion <u>in limine</u> to exclude psychiatric testimony (doc. no. 87) is granted. Defendant Taneshia Michelle Lawson's evidence of diminished mental capacity is excluded at trial.

DONE, this the 30th day of October, 2006.


<u>    /s/ Myron H. Thompson    </u>
UNITED STATES DISTRICT JUDGE

_____

3.  (...continued)
    distracts and confuses the jury from
    focusing on the actual presence or
    absence of mens rea."

827 F.2d at 903-04 (citations omitted).

This court has given Lawson the benefit of the doubt and assumed that she was attempting to assert the defense of the first strain. In fact, because her report speaks in such general terms about her retardation and other mental-health difficulties, and because it is not keyed to the crimes charged, it could be reasonably understood that she is asserting only the second strain. Without a doubt, her circumstances are not so "extraordinary" as to support the conclusion that she "actually lack[s] the capacity to form mens rea as it is normally understood in American law." <u>Id</u>. at 903.