IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )   CRIMINAL ACTION NO.
    v.                      )      2:06cr173-MHT
                            )          (WO)
TANESHIA MICHELLE LAWSON    )
```

OPINION AND ORDER

The question posed to the court is whether a defendant, without invoking the insanity defense and thus without being subject to the restrictions that defense would place on her, may use expert testimony that she is mentally retarded to challenge at trial her alleged confession. The court holds here that she may be able to do so, but not in the form she seeks. For that reason, as explained below, the court will grant the government's motion <u>in limine</u> to exclude the defendant's expert testimony that she is mentally retarded.

I.

Defendant Taneshia Michelle Lawson was indicted on two counts, one for conspiracy to commit theft of government property and the other for theft of government property, for having allegedly cashed someone else's Social Security check as her own in 2003. On October 30, 2006, this court granted the government's motion *in limine* to prevent Lawson from introducing, for the purpose of challenging the *mens rea* elements of the offenses with which she is charged, psychiatric testimony that she is "within the upper limits of the mild range of mental retardation." United States v. Lawson, ___ F.Supp.2d ___, 2006 WL 3075707 (M.D. Ala. 2006) (Thompson, J.) (quoting Psych. Report at 5).

With the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4247, Congress imposed twin mandates. First, it established that, "It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the

offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. Second, it declared, "Mental disease or defect does not otherwise constitute a defense." Id. With the second mandate, Congress "intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a 'diminished responsibility' or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony." S. Rep. No. 98-225, 98th Cong., 2d Sess. 229 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3411.

In addressing whether these twin mandates preclude a defendant from introducing expert psychiatric testimony that the defendant lacked, at the time of the offense, the specific intent to carry out the crime charged, courts had, at least, two options. First, they could

have banned all expert testimony at trial regarding a defendant's mental state except that which was introduced pursuant to an insanity defense and all its restrictions. Cf. Clark v. Arizona, 548 U.S. ___, 126 S.Ct. 2709, 2731-32 (2006) (upholding Arizona's categorical rule precluding psychiatric testimony, outside of an insanity defense, to negate the mens rea element of an offense).

In Lawson, ___ F.Supp.2d ___, 2006 WL 3075707, this court, drawing on law from several courts of appeals including the Eleventh Circuit, rejected this first option. Instead, the court concluded that, despite these twin mandates, the Insanity Defense Reform Act did not preclude a defendant from introducing expert psychiatric testimony that the defendant lacked, at the time of the offense, the specific intent necessary to carry out the crime charged. See, e.g., United States v. Cameron, 907 F.2d 1051, 1066 (11th Cir. 1990); United States v. Pohlot, 827 F.2d 889, 890 (3d Cir. 1987). The court recognized that, theoretically speaking and in the "rare

case," Cameron, 907 F.2d at 1066; Pohlot, 827 F.2d at 900, a defendant's mental disease or defect could negate mens rea where the defendant's acts meet the physical elements of the crime charged. Lawson, ___ F.Supp.2d at ____, 2006 WL 3075707 at *2.

However, this court concluded that, "[b]ecause psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of mens rea, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, ... district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of mens rea," Lawson, ___ F.Supp.2d at ____, 2006 WL 3075707 at *4 (quoting Cameron, 907 F.2d at 1067 (internal quotation marks omitted)). More specifically, a district court must be sure that a defendant's psychiatric expert testimony is

"adequately keyed" to the issue of whether she lacked specific intent at the time of the offense. Id. at *5 (quoting United States v. Childress, 58 F.3d 693, 729 (D.C. Cir. 1995) (per curiam)). If the defendant were permitted to introduce evidence of general mental-health maladies in an attempt to negate the mens rea element of a specific intent crime, this would be little more than a backdoor entrance for a form of insanity defense expressly excluded by the twin mandates of the Insanity Defense Reform Act. Id. at *3 (citing Cameron, 907 F.2d at 1066).

There is an additional important reason, not mentioned in the court's earlier opinion, why the court, in scrutinizing expert psychiatric evidence outside the presence of the jury, must require a defendant's expert testimony to be keyed to the specific issue to be addressed. By requiring such, the court, in carrying out its evidentiary gatekeeping function, is better able to ensure that there is a real and true foundation in the

6

expert testimony for the specific inference the defendant wishes the jury to draw and, thus, that the defendant is not introducing psychiatric testimony under the guise of a legitimate defense theory when in fact the defense strategy is simply to inform the jury generally that the defendant is mentally retarded.  See Fed. R. Evid. 702 (to be admissible, the expert testimony must be able to "assist the trier of fact to understand the evidence or to determine a fact in issue").

This court held that Lawson's psychiatric evidence of mental retardation, which was nothing more than a general report reflecting that she is mildly mentally retarded, was not "adequately keyed" to the issue of whether she lacked specific intent at the time of the offense, and thus was not admissible to negate mens rea. Lawson, ___ F.Supp.2d at ____, 2006 WL 3075707 at *5.  The report did not address the specific circumstances of the alleged crime and why Lawson's specific level of mental retardation (that is, her range of mental retardation and

her limit within that range) and her other attendant mental-health difficulties would have limited her from forming the required <u>mens rea</u> in those specific circumstances.  (It goes without saying that not all the mentally retarded are the same, nor do they suffer from the same degree of disability in all circumstances; as stated, Lawson is only "within the upper limits of the mild range of mental retardation." Psych. Report at 5.) Instead, the report was just an open invitation to the attorneys to speculate before the jury as to the effect, if any, of Lawson's particular level of mental retardation on her ability to form the required <u>mens rea</u> to commit the crimes charged--the very type of free-wheeling trial on a defendant's mental health that the Insanity Defense Reform Act was designed to rein in.

## II.

Now, Lawson wishes to introduce the same evidence, albeit for a different general purpose.  This time,

Lawson wants to challenge the weight the jury should accord the inculpatory statements she made to the police. According to Lawson, the jury will be unable to appreciate fully the unreliability of her confession unless it hears testimony that she is mentally retarded. Therefore, the psychiatric testimony of Lawson's mental disability should be admitted, not for the purpose of negating *mens rea*, but to assist the jury in assessing the weight and credibility of her confession.

Unfortunately, Lawson's general psychiatric evidence of mental retardation is no more "keyed to the issue," *Childress*, 58 F.3d at 729, of whether the jury should believe her confession than it was to the issue of whether she had the requisite *mens rea* at the time of the offense. Just as the court would require some expert evidence that Lawson's mental retardation caused her to lack *mens rea* at the time of the offense, here the court requires some expert evidence that Lawson's specific

level of mental retardation caused her confession to be false, involuntary, or both.

Admittedly, it appears that mentally retarded defendants tend to be more susceptible to giving false confessions when placed under stressful conditions of interrogation. See Atkins v. Virginia, 536 U.S. 304, 320 & n.25 (2002); Ellis & Luckasson, Mentally Retarded Criminal Defendants, 53 Geo. Wash. L. Rev. 414, 445-52 (1985). These authorities do not say, however, that the mentally retarded, regardless as to their level of mental retardation, are incapable of giving a truthful confession, regardless as to the circumstances. Here, Lawson does not propose that her psychiatrist will testify one way or another on this issue, as he is not an expert on false confessions. More importantly, Lawson's psychological report, which is all the parties have submitted as evidence, offers, first, no background facts or expert opinion on the conditions of Lawson's own interrogation in this particular case and, second, no

testimony on why her specific level of mental retardation and its attendant difficulties made her, in particular, more susceptible to giving a false confession under the circumstances in which she allegedly confessed. Indeed, the court has yet to learn from any source the conditions under which Lawson allegedly confessed.

Instead, because there is absolutely nothing in the report that addresses or even mentions what effect, if any, different ranges of mental retardation (including the limits within those levels) have a person's ability to confess truthfully and voluntarily in the specific circumstances in which Lawson confessed, the attorneys could do no more than speculate, through arguments before the jury, on the effect, if any, of Lawson's level of mental retardation on her ability to confess in the circumstance under which she confessed.

To extend the "key" metaphor previously quoted from <u>Childress</u>, the court requires that Lawson provide both a 'lock' and a 'key.' The lock consists of the

11

circumstances surrounding the event in question--the crime or the confession. The key (the expert testimony) then unlocks, that is, explains, how the defendant's mental disability played itself out in the these specific circumstances. That is, the testimony should explain why, because of her specific mental disability, the defendant said or did something, or failed to say or do something, in these specific circumstances or why, because of her specific mental disability, the defendant intended, or could not have intended, the result in these circumstances. Without such restrictions on the evidence, the court has no effective way to make sure the psychiatric expert testimony is kept within the confines Congress so carefully crafted in the Insanity Defense Reform Act. Lawson's expert report gave us no lock, and, more importantly, no key.

### III.

Lawson argues that this court must admit her expert psychiatric testimony because, under <u>Crane v. Kentucky</u>, 476 U.S. 683 (1986), it is part of her constitutional right to present a defense. Indeed, the Supreme Court has forcefully expressed that a defendant's constitutional right to present a defense includes the "traditional prerogative to challenge the confession's reliability during the course of the trial." <u>Crane</u>, 476 U.S. at 688. Accordingly, the defendant cannot be prevented from introducing "competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence." <u>Id</u>. at 691. <u>See also</u> 18 U.S.C. § 3501(a) (permitting jury to hear evidence on voluntariness after threshold ruling by the court), <u>limited by</u> <u>Dickerson v. United States</u>, 530 U.S. 428 (2000).

However, the <u>Crane</u> court also recognized that the right to present a defense was not absolute, and is

circumscribed by the rules of evidence. The <u>Crane</u> decision did not "question the power ... to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability--even if the defendant would prefer to see that evidence admitted." <u>Crane</u>, 476 U.S. at 690. Recently, the Supreme Court reaffirmed <u>Crane</u>'s guarantee of the right to present a defense while also emphasizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." <u>Holmes v. South Carolina</u>, 548 U.S. ___, 126 S.Ct. 1727, 1728 (2006).

IV.

Therefore, Lawson's right to present expert evidence to challenge the credibility of her confession is not absolute. A psychiatrist's expert testimony that Lawson

is mentally retarded must first be probative, Fed. R. Evid. 702, and then, even if probative, must be weighed against the danger that such testimony will confuse the issues or mislead the jury. Fed. R. Evid. 403. If the probative value of the evidence is substantially outweighed by that danger, then it may be excluded without violating Lawson's constitutional right to present a defense.

Here, the court believes that, because Lawson's expert evidence is general and unkeyed, its probative value is slight-to-none, <u>see</u> Fed. R. Evid. 702, and the danger of confusing the issues or misleading the jury is serious and real. <u>See</u> Fed. R. Evid. 403. As discussed above, psychiatric testimony of Lawson's mental disability, standing alone, gives the jury little, if any, insight into the likelihood that Lawson's confession was involuntary or false. Without analyzing, say, the conditions of Lawson's interrogation and without evidence on how a person with her specific level of retardation

15

would react in such conditions, the expert evidence is not tailored at all to the credibility of the confession in this particular case.

Meanwhile, there is substantial danger that expert testimony of Lawson's mental retardation, not tailored to the particular circumstances of her confession, will confuse or mislead the jury, should they believe her confession itself to be voluntary and accurate. First, as discussed in the court's previous opinion, the jury could be misled into <u>excusing</u> criminal conduct based on evidence that the defendant suffered from mental abnormalities <u>not</u> excused by the Insanity Defense Reform Act.

Second, now that the court has granted the government's motion <u>in limine</u> excluding psychiatric evidence on the issue of <u>mens rea</u>, there is a substantial danger that the jury could be misled into acquitting Lawson because they believe her mental retardation negates the <u>mens rea</u> element of the crime--the very

defense theory this court has already ordered excluded. In other words, just as the court previously recognized the danger that Lawson could slip in a backdoor insanity defense by presenting a legally untenable lack-of-<u>mens-rea</u> defense, the court is now equally concerned that Lawson could slip in a backdoor lack-of-<u>mens-rea</u> defense by arguing a legally untenable theory of involuntary or false confession.

It is, of course, the confession itself that Lawson challenges, not the government's evidence of her mental state at the time of the offense.  But this is precisely why expert testimony of psychiatric infirmities must be "adequately keyed to the issue" for which it is offered, <u>Childress</u>, 58 F.3d at 729, not merely laid out in the open for the jury to mull over in the context of the case as a whole, and, perhaps more importantly, not merely laid out in the open for the attorneys to speculate on what effect those infirmities may, or may not, have had on the defendant's confession in this case specifically.

The admission of such expert testimony, not adequately tailored, has no probative value as to the issue for which it is offered, and presents a substantial danger of being misleading or confusing.

Lawson suggests that the court give the jury a limiting instruction. Indeed, limiting instructions are common when the court finds evidence probative of a certain issue but not relevant to another. However, limiting instructions should not be deployed to make up for glaring deficiencies in the evidence itself. In this case, <u>if</u> the psychiatric testimony were adequately keyed to the conditions and circumstances of Lawson's confession and <u>if</u> the court were then to determine that the evidence is relevant, then a limiting instruction would be appropriate to remind jurors that the expert evidence goes to the weight of the confession only. Given that the expert testimony is not tailored in this way, a limiting instruction would be of no use--for the expert testimony, as it now stands, has no probative

value.  A limiting instruction cannot make non-probative evidence probative.

V.

In sum, the court requires that any expert psychiatric testimony Lawson wishes to introduce specifically address how the conditions of interrogation or other circumstances of the confession could cause her confession in this case to be involuntary or false. Here, Lawson's expert testimony does not even mention that her specific level of mental retardation (that is, the fact that she is "within the upper limits of the mild range of mental retardation," Psych. Report at 5) had an effect on the voluntariness or reliability of her confession.  The court therefore holds that she should not be permitted to introduce expert evidence of her mental retardation for the purpose of challenging the weight and credibility of her confession.

Again, the court emphasizes that it is not holding that, under the Insanity Defense Reform Act, expert mental-health evidence is not admissible outside the insanity defense. And, more specifically, this court is not even saying that such evidence is not admissible in this case. All the court is saying is that the evidence, to be admissible in light of the statute's twin mandates, must first be keyed to the specific issue for which it is offered--here, Lawson's confession. Lawson's expert testimony fails to meet this threshold of admissibility.

Accordingly, it is ORDERED that the government's second motion in limine (doc. no. 104) is granted.

DONE, this the 6th day of November, 2006.

      /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE