

# CLINICAL & FORENSIC INSTITUTE, INC.

JOHN A. SPENCER, PH.D.
CLINICAL DIRECTOR
LICENSE: # PY0003204

LORI J. BUTTS, J.D., PH.D.
TREATMENT DIRECTOR
LICENSE: # PY0006490

December 19, 2006

Christopher A. Snyder, Esq.
Assistant United States Attorney
United States Attorney's Office
Middle District of Alabama
One Court Square, Suite 201
Post Office Box 197
Montgomery, Alabama 36101-0197

Re:     **United States of America v. Taneshia M. Lawson**
Case #: **2:06-cr-173-MHT**

Dear Mr. Snyder:

Pursuant to your request, I conducted a psychological evaluation of Ms. Lawson, on December 9, 2006 in a conference room at your offices. Ms. Lawson was accompanied to the evaluation by her attorney, Ms. Christine Freeman, Esq. The purpose of the evaluation was to render a determination of the defendant's intellectual functioning and the possible impact of her intellectual functioning on her ability to form the specific intent for the crimes for which she has been accused and the possible impact of her intellectual functioning on her confession. My evaluation consisted of a review of various documents that are delineated below, an administration of the Computer Test of Nonverbal Intelligence (CTONI), an administration of the nonverbal subtest of the Validity Indicator Profile, a mental status examination, and an extended clinical interview.

**Materials Reviewed:**

- Corvin, Theron M., Curriculum Vitae
- Corvin, Theron M., Psychological Testing
- Corvin, Theron M., Ed.D., LPC, LMFT, Addendum Report, not dated
- Corvin, Theron M., Ed.D., LPC, LMFT, Neurobehavioral Health Evaluation dated October 6, 2006
- Carver High School Records of Taneshia Lawson
- Government's Proposed Jury Instructions
- Houston Hill Junior High School Records of Taneshia Lawson
- Lawson, Taneshia, response to Motion to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony

4801 S. UNIVERSITY DRIVE, SUITE 301-EAST
DAVIE, FLORIDA 33328
PH. (954) 434-8006 - FAX (954) 434-0147

3767 LAKE WORTH ROAD, SUITE 100
LAKE WORTH, FLORIDA 33461
PH. (561) 968-1212 - FAX (561) 968-1207

- Lawson, Taneshia, response to Motion in Limine to Exclude Defendant's Newly Identified Expert Testimony Regarding Lawson's Mental Capacity
- Lawson, Taneshia, response to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity
- McIntyre Junior High School Records of Taneshia Lawson
- Patterson Elementary School Records of Taneshia Lawson
- United States v. Lawson, Court Order dated October 30, 2006, Honorable Myron H. Thompson
- United States v. Lawson, Court Order dated November 6, 2006, Honorable Myron H. Thompson
- United States v. Lawson discovery letter dated July 25, 2006
- United States v. Lawson discovery letter dated October 26, 2006
- United States v. Lawson discovery letter dated November 2, 2006
- United States v. Lawson discovery letter dated November 3, 2006
- United States v. Lawson Indictment dated July 25, 2006
- United States v. Lawson Motion to Strike Defendant's Diminished Capacity Notice, or in the Alternative in Limine to Prevent Introduction of Psychiatric Testimony
- United States v. Lawson Motion in Limine to Exclude Defendant's Newly Identified Expert Testimony Regarding Lawson's Mental Capacity
- United States v. Lawson Motion to in Limine to Exclude School Records and Lay Testimony Regarding Lawson's Mental Capacity

**Relevant Historical Data:**

Ms. Lawson is a 22 year old (DOB: 08/03/1984), single African American female who is facing conspiracy and theft charges subsequent to the allegations that she and three codefendants participated in the stealing and cashing of four social security checks from a neighbor. Ms. Lawson's prior legal history involves citations for driving without a license and for having an improper license tag.

Ms. Lawson reported that she ceased attending high school when she was in the tenth grade due to her pregnancy. Ms. Lawson's school records indicate a history of poor academic performance. Nevertheless, Ms. Lawson was not referred to a special educational program.

Ms. Lawson has a 4 year old son and she is currently 7 months pregnant. Ms. Lawson has never been married and she is not currently dating the father of her unborn child. Ms. Lawson also reported that she currently lives in her mother's home but that she is in the process of applying for subsidized housing. Ms. Lawson indicated that she receives medical care pursuant to her application for Medicaid.

Ms. Lawson reported that she has held three jobs in the past where she has been employed as a janitor, as a cashier at McDonalds, and as a food runner at Sonic. Ms. Lawson reported that she ceased working as a janitor and at

**Lawson, Taneshia**                                                           Page 3

McDonalds due to transportation difficulties. She indicated that she quit her job at Sonic because she reported that she had difficulties in delivering the correct orders. Ms. Lawson reported that she is currently unemployed but she indicated that she is actively attempting to seek employment. Ms. Lawson stated that she would consider a position as a cashier or assist in stocking at a grocery store, a clothing store, or a restaurant.

### Assessment Results:

The Comprehensive Test of Nonverbal Intelligence (CTONI) is an instrument intended to measure abilities that exist independent of language. The CTONI was given to Ms. Lawson by computer administration. Ms. Lawson received the following overall scores:

| | |
|---|---|
| Pictorial Standard Score | 66 |
| Geometric Standard Score | 59 |
| Nonverbal Intelligence | 60 |

Below is a summary of the individual subtest scores in the order of administration.

| | Standard Score | Percentile | Description |
|---|---|---|---|
| Pictorial Analogies | 1 | <1 | Very Poor |
| Geometric Analogies | 1 | <1 | Very Poor |
| Pictorial Analogies | 7 | 16 | Below Average |
| Geometric Categories | 6 | 9 | Below Average |
| Pictorial Sequences | 6 | 9 | Below Average |
| Geometric Sequences | 4 | 2 | Poor |

Ms. Lawson had difficulty adjusting to the computerized format of the test administration on the first two subtests. In this regard, her performance on these subtests may not reflect her actual nonverbal abilities. The pictorial analogies subtest measures the ability to recognize the relationship of two objects to each other and to find the same relationship between two different objects. The geometric analogies subtest measures the ability to recognize the relationship of two geometric designs to each other and to find the same relationship between two different geometric designs. The first subtests are components of the overall scores presented above and therefore underestimate her performance on the overall nonverbal measure scores and on each overall composite score.

On the last four subtests within the CTONI, Ms. Lawson's performance was more consistent to her performance on other tests and with her school records. Her performance on the four subtests indicate that her nonverbal intellectual ability falls between the below average to poor range. Amongst these subtests, her relative strengths were in her ability to select from a set of different pictures the one that is the most similar to two other related pictures as measured by the

pictorial analogies subtest. Relative to these four subtests, her weakness was her ability to select from a set of geometric designs the one that completes a sequence of action shown in the three designs. The geometric categories subtest measures the ability to select from a set of different geometric designs the one that is most similar to two other related geometric designs and the pictorial sequences subtest measures the ability to select from a set of pictures the one that completes a sequence of actions shown in the three pictures.

The Validity Indicator Profile is an instrument utilized to assess response style. This instrument was designed to evaluate the test taking behavior of the respondent. The instrument provides an indication as to whether the respondent is putting forth his or her best effort on measures of cognitive ability. The nonverbal portion of the instrument was administered to Ms. Lawson. The resultant profile indicated that it was an invalid administration and that she responded in an inconsistent manner. The resultant profile indicated that Ms. Lawson failed items that were within her range of abilities because she correctly responded to more difficult items. The results suggest that Ms. Lawson may have been too tired to do her best, that she may not have been sufficiently invested in the testing process, or that mild intellectual limitations impacted her performance on the instrument.

## Mental Status Exam:

Ms. Lawson entered the evaluation room with her attorney. She was dressed in casual clothing and appeared to be pregnant. She was well groomed and her personal hygiene appeared to be good. Throughout the interview, Ms. Lawson was pleasant and accommodating, and she participated appropriately in the interview and in the psychological assessment process. Ms. Lawson's orientation to person, place, and time was intact. She was aware of, and responsive to, her situation and surroundings. Although her affective responses showed mild blunting, her affect was appropriate to the situation and to the content of speech. At one point during the interview Ms. Lawson became tearful and she requested a short break. After a period of time she was able to modulate her emotions and resume the evaluation process. She was able to follow the flow of conversation. Her responses were generally relevant and congruent with the contextual theme. Ms. Lawson's attention and concentration also appeared to be generally intact. Consonantly, Ms. Lawson was able to communicate recent and remote events indicating gross memory functioning within normal limits. Ms. Lawson reported no present perceptual disturbances, bizarre or peculiar beliefs, nor other indicia of grossly impaired perceptions. Nothing in her clinical presentation or subjective report was suggestive of psychotic symptomatology or of other major disturbances of reality testing other than the cognitive concreteness that is characteristic of individuals who have mild intellectual deficits.

### Ms. Lawson's Account of the Instant Offense:

Ms. Lawson described that at the time of the alleged offenses she was residing at the home of one of her friend's, Monica Woodall. Ms. Lawson indicated that while she resided with a friend, Ms. Lawson's son was being cared for by Ms. Lawson's mother. She also indicated that another female, Unique Muskelly, was living in the same residence. Ms. Lawson stated that Ms. Woodall was displeased with both Ms. Lawson and Ms. Muskelly for their failure to contribute to the household expenses. Ms. Lawson stated that Ms. Muskelly became aware that another woman in the apartment complex received social security checks at the beginning of each month. Ms. Lawson reported that Ms. Muskelly retrieved the first two checks from the neighbor's mailbox. Ms. Lawson stated that on the occasion of the cashing of the first two checks she had just returned home from the previous evening and that she was tired. Ms. Lawson reported that despite being tired she agreed to join both Ms. Woodall and Ms. Muskelly on their outing to the pawn shop. Ms. Lawson stated that she was aware that the checks belonged to someone else and that she was made aware of the arrangement made with the employee of the pawn shop whereby he would receive a portion of the checks in exchange for cashing the checks. After Ms. Muskelly cashed the first two checks, Ms. Lawson reported that she was given a portion of the checks in the amount of twenty-five dollars.

Ms. Lawson stated that on the second check cashing occasion Ms. Muskelly again retrieved the neighbor's checks from the mailbox. Ms. Lawson discussed that Ms. Woodall was at work at the time that Ms. Muskelly brought the checks into the apartment. Upon Ms. Woodall's return from work the three women then proceeded to the same pawn shop to cash the checks. Ms. Lawson stated that Ms. Muskelly and Ms. Woodall entered the pawn shop first with one of the checks while Ms. Lawson waited in the car. Ms. Lawson reported that when the two women exited the pawn shop and returned to the vehicle she then exited the vehicle and entered the pawn shop. Ms. Lawson stated that she knew which man to approach in the pawn shop because she had seen him the previous month. Ms. Lawson indicated that this man did not ask her for identification and that he gave her the money for the check minus the portion that he kept for himself.

Ms. Lawson stated that she knew that the checks did not belong to her and that she was violating the law by engaging in this behavior. Ms. Lawson discussed that she was in need of money and used a portion of the money that she received to pay Ms. Woodall for household expenses. Ms. Lawson reported that she did not believe that anyone would discover the unlawful behavior.

Additionally when queried about the circumstances surrounding her sworn statement to law enforcement after some prompting Ms. Lawson recalled that the

**Lawson, Taneshia**                                                    **Page 6**

agent came to her home and that he had instructed her about her rights and that he read the rights waiver statement to her. Ms. Lawson indicated that she understood the rights that were enumerated by the law enforcement agent. Ms. Lawson stated that she cooperated with the investigators because she believed that doing so was in her best interest. Ms. Lawson read her sworn statement aloud to the evaluator. Ms. Lawson acknowledged that her statement was accurate and that no one instructed her on what information to convey and that no one assisted her in formulating her statement. Consonantly, Ms. Lawson reported that at no time did she feel threatened or forced to make a statement by any law enforcement official.

## Conclusions:

**It is my advisory opinion that Ms. Lawson had the capacity to formulate the requisite intent at the time of the alleged offenses.**

At this time, Ms. Lawson appears to be well reality-grounded and situationally aware. Further, the information available to me indicates that her basal mental status during the period of the alleged offenses was substantially similar to her current clinical presentation. In this respect, although Ms. Lawson certainly has mild intellectual deficits that undoubtedly affect her judgment and her ability to form accurate assessments of the probability of certain outcomes, her cognitive abilities would not prevent her from knowing and appreciating the ramifications of her behavior in relation to the allegations. Specifically, a review of the relevant documents made available and Ms. Lawson's recollection of her life circumstances argue that at the time of the alleged incident Ms. Lawson suffered from no mental disease, defect, or infirmity that would have impaired her reality testing to the extent that she would not have had the ability to know that she was engaged in unlawful activity and that she was participating with other people in the commission of a crime. Moreover, Ms. Lawson has the intellectual capacity to formulate an understanding and she possesses an awareness that she and her associates were illegally depriving another person of her social security benefits. Furthermore, Ms. Lawson has the capacity to understand that she can be held responsible for other people's behavior by either in aiding or abetting stealing or by participating in behaviors in furtherance of a conspiracy.

**It is also my advisory opinion that Ms. Lawson was capable of providing a knowing, intelligent, and voluntary waiver of her Miranda rights.**

At the time that Ms. Lawson provided law enforcement with her sworn statement, she was not suffering from any mental disease or defect that substantially impacted her ability to knowingly or intelligently waive her Miranda rights. Despite Ms. Lawson's mild cognitive deficits, Ms. Lawson was capable of understanding the information provided by law enforcement and was capable of formulating decisions based upon the information provided to her. Ms. Lawson discussed that she believed that it was in her best interest to cooperate with the

investigators and to provide an accurate statement to law enforcement. Ms. Lawson also reported that at no time did she feel threatened or coerced by law enforcement agents.

Thank you for this interesting referral, if I can be of further assistance in this matter, please do not hesitate to contact me.

Respectfully Submitted,

*L. Butts*

Lori J. Butts, J.D., Ph.D.
Licensed Psychologist