IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CR. NO. 2:06-cr-173-MHT |
| TANESHIA MICHELLE LAWSON | ) ) ) | |

**United States' Response to Motions In Limine Regarding 404(b) Evidence**

Both of Defendant Teneshia Michelle Lawson's Motions in Limine to exclude 404(b) evidence should be denied.  First, the Government's proffered evidence meets the requirements of Rule 404(b) evidence.  It is relevant to negate Lawson's specific intent defense, sufficient to demonstrate Lawson committed the act, and probative.  Because these requirements have been met and because Rule 404(b) is a rule of inclusion, not exclusion, the evidence therefore should be admitted at trial.

Furthermore, the photo array used was permissible.  It was neither unnecessarily suggestive, nor unreliable.  The evidence should therefore be admitted.

# I. Background

At a hearing on the matter, the evidence would demonstrate:

1.      On October 21, 2006, at a Sneakers store in Auburn, a woman presented a stolen check to purchase $237.58 in shoes at the store.  On the same day, in the same time frame at the store, a man also presented a stolen check to purchase shoes–again in the

amount of $237.58. On the next day, October 22, 2006, at the same store, the man presented another stolen check for $183.58 to purchase shoes. A woman, matching the description of the woman who cashed the stolen check from the day before, was again present with the man when he cashed the third stolen check.

      2.      Approximately eleven days later, two employees of the store, Leah Epling and Nicki Thrailkill, identified Lawson from a photo lineup as being in the store. Epling stated that she observed Lawson in the store on both days. Epling first observed Lawson in the store on October 21, 2006. On that day, Epling was not working the cash register during the Lawson transaction, but did observe Lawson present a check to another employee. That check was later determined to be stolen. Epling also observed Lawson in the store on October 22, 2006. Epling stated that she was able to observe her for approximately two hours on that day.

      3.      Thrailkill observed Lawson in the store on October 22, 2006. Thrailkill said she was able to observe her in the store for approximately one and one half hours. Thrailkill also noted that Lawson came in around the same time as the man, who cashed the stolen check that day.

      4.      Video and authenticating testimony from store employees will show that security video was taken inside the Sneakers store on both October 21, 2006, and October 22, 2006. On October 21, 2006, the video, while slightly grainy, shows a pregnant African-American woman, wearing a bulky dark-colored sweatshirt/large jacket and a white winter stocking cap, which appears to be containing a large amount of hair

underneath it.

5. The video from October 22, 2006, is of better quality. It will demonstrate that a pregnant woman in blue jeans and a white t-shirt with the same, hair color, hair style, and facial features as Lawson was in the store at the same time. The video shows Lawson in the store at the same times as the man who was presenting the fraudulent checks.

6. The Auburn Sneakers store is over 50 miles away from Lawson's residence in Montgomery. Lawson is not currently employed. Lawson was approximately six months pregnant when these stolen checks were fraudulently presented at Sneakers. Neither of the victims, whose checks were stolen, however, are pregnant.

7. One employee of the store, Simone Hicks, who was working in the Sneakers store on October 21, 2006, and running the cash register, did not identify Lawson from the same photo lineup. Hicks, however, is a high school student, who is between the age of 16 and 18 years old.

8. On information and belief, the store manager, Adam Cook, will state either that he was not present at the store on the dates when the checks were cashed, or that he does not have a clear recollection of the suspects because he was not involved in storefront transactions.

## II. Arguments

### A. The Proffered Evidence Meets Each of the Requirements Under Rule 404(b); It Should Be Admitted.

The proffered evidence should be admitted under Fed. R. Evid. 404(b). Rule 404(b) permits "evidence of other crimes, wrongs, or acts" not otherwise admissible to be admissible to prove–among other things–intent. To determine whether extrinsic evidence is admissible under Rule 404(b), Eleventh Circuit applies a three-part test.[1] "First, the evidence must be relevant to an issue other than the defendant's character."[2] Second, the government must show, by a preponderance of the evidence, that the defendant actually committed the extrinsic act.[3] Finally, "the probative value of the evidence must not be substantially outweighed by unfair prejudice."[4] The proffered evidence meets each of these requirements.

First, the proffered evidence is relevant to prove both Lawson's specific intent to steal each of the four Social Security checks in issue as well as her conspiring with others with the specific intent to steal. A "defendant who enters a not guilty plea makes intent a material issue," which is sufficient to prove the first element of the three-part test.[5]

---

[1] *United States v. Calderon,* 127 F.3d 1314, 1330 (11th Cir. 1997).

[2] *Id.*

[3] *United States v. Bowe,* 221 F.3d 1183, 1192 (11th Cir. 2000).

[4] *Calderon,* 127 F.3d at 1330.

[5] *United States v. Delgado,* 56 F.3d 1357, 1365 (11th Cir. 1995); *United States v. Matthews,* 431 F.3d 1296, 1311 (11th Cir. 2005) (quotations omitted) (noting in the context of a conspiracy charge, when

Lawson argues that the Government cannot meet this element, arguing that the intent of the proffered 404(b) evidence is not the same as the intent as the charged offense.[6] This is just not so. Lawson has been charged with (1) conspiracy to steal Social Security checks and (2) theft of the Social Security checks.[7] The substantive offense requires an intent to steal; the conspiracy charge requires an agreement with the intent to steal. The proffered evidence and its corresponding intent are virtually identical, consisting of at least one person stealing checks (the substantive offense) and two or more persons in concert cashing the stolen checks (the conspiracy). The proof for the extrinsic evidence and their charged conduct is the same.

Second, the proffered evidence shows, by a preponderance of the evidence, that Lawson committed the extrinsic act. Video evidence shows a young, pregnant African-American female, matching Lawson's description, at the Sneakers store, which was over 50 miles from her house, at the exact time that stolen checks were cashed. No fewer than two employees, who observed Lawson for at least an hour and a half on one day, picked her out of a photo array, conducted approximately a week and a half later. One employee observed Lawson passing the stolen check. While reasonable minds may disagree as to whether the proffered evidence establishes Lawson's involvement beyond a reasonable

---

the defendant pleads not guilty, he has made his intent a material issue).

[6] For this basic proposition underlying the argument, see *United States v. Dickerson,* 248 F.3d 1036, 1047 (11th Cir. 2001) (internal quotation marks omitted). While the proposition is correct, Lawson cites to *United States v. Jones*, 28 F.3d 1575 (11th Cir. 1574 (11th Cir. 1994) *overruled on other grounds*, 516 U.S. 1022 (1995), which deals with the requirements to prove 404(b) <u>identity</u> evidence.

[7] Along with aiding and abetting.

doubt, beyond a reasonable doubt is not the standard. The standard of proof is preponderance of the evidence. Here the proffered evidence establishes by no less than clear and convincing evidence that Lawson committed the extrinsic act.

Finally, the probative value of the proffered evidence outweighs any unfair prejudice. In determining this issue, the question is not whether the proffered evidence is prejudicial; "[t]he nature of the government's evidence against a defendant is meant to be prejudicial."[8] Instead, the inquiry is "not whether the evidence itself is prejudicial, but rather whether its probative value is outweighed by its prejudicial effect."[9] In this vein, the Supreme Court–and consequently the Eleventh Circuit–have noted that Rule 404(b) "is a rule of inclusion, and accordingly 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case."[10] As the Supreme Court has noted, "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence."[11]

In this case, the proffered evidence is directly relevant to the Government's proof of intent. Throughout the last three months of this case, Lawson has made clear that she

---

[8] *United States v. Wright,* 392 F.3d 1269, 1276 (11th Cir.2004)

[9] *Id.* (holding that "the balancing test prescribed by Rule 403 militates in favor of admissibility").

[10] *United States v. Jernigan,* 341 F.3d 1273, 1280 (11th Cir.2003) (internal quotation marks omitted); *see also Huddleston v. United States,* 485 U.S. 681, 689-90 (1988) (reflecting an inclusive approach to Rule 404(b) evidence, observing that Rules 404-412 seek only to limit the uses, rather than to prohibit the introduction, of problematic evidence).

[11] *Huddleston*, 485 U.S. at 689-90.

intends to present a defense that she lacked the specific intent necessary: (1) to steal more than the one check she signed; and (2) to enter into an agreement with the intent to steal.

Because Lawson put her intent squarely in issue with her defense, the Government's need to have evidence challenging Lawson's defense is strong.[12]  As the Supreme Court has noted, "[e]xtrinsic acts evidence [can] be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."[13]  Without this evidence, the Government would be required to rely on testimony from Lawson's co-conspirators.  While this testimony would no doubt be helpful to the government to prove Lawson's intent, the credibility of these co-conspirators is obviously vulnerable to attack.[14]  Thus, because of Lawson's defense, the probative value of this evidence outweighs its prejudicial effect.[15]

### B.    The Secret Service's Photo Array Was Proper.

The photo array in this case was proper.  An identification procedure, like a photo array, is considered valid unless it is both (1) unnecessarily suggestive and (2) creates a

---

[12] *United States v. Dorta*, 157 Fed.Appx. 197, 199-01 (11th Cir. 2005) (holding same for extrinsic acts which negated a "mere presence" defense.); *see also United States v. Capo*, 693 F.2d 1330, 1336-37 (11th Cir. 1982).

[13] *Huddleston*, 485 U.S. at 685 ("may" in original redacted portion).

[14] *Dorta*, 157 Fed.Appx. at 201 (affirming district court judge holding same).

[15] *See United States v. Delgado,* 56 F.3d 1357, 1366 (11th Cir.1995) (citation omitted) ("The greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice .").

substantial risk of misidentification violating due process.[16] Neither can be met here; thus, the photo array was valid properly administered.

First, there was no unnecessary suggestiveness in the photo array. Singling out, a show-up, or "indicating to the witness that the man in custody is the man the police believe to have committed the crime, [are the] classic example[s] of impermissible suggestiveness."[17]  No such circumstances exist here.  The Secret Service used a photo array with photos of woman who were of the same race, hair color, and approximately the same age.

Lawson's claims that her row placement was suggestive are unsupported by case law.[18] Moreover, Lawson's chief complaint–that there were no 40 year-old women included in the photo array–is without merit.  That description was, however, given by a manager, who either was not present or has no recollection of these transactions.  Further, the Secret Service created the array after it had an opportunity to review video of the incident.  Based upon the appearance of the person who is plainly viewable in the video, a photo array was created.  In sum, Lawson bears the burden of showing impermissible

---

[16] *Manson v. Brathwaite,* 432 U.S. 98, 107 (1977).

[17] *Crume v. Beto*, 383 F.2d 36, 39 (5th Cir. 1967), *see also  Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987); *Bloodworth v. Hopper*, 539 F.2d 1382 (5th Cir. 1976); *Hudson v. Blackburn*, 601 F.2d 785, 788 (5th Cir. 1979).

[18] *Cf. Cikora v. Dugger,* 840 F.2d 893, 896 -897 (11th Cir. 1988) ("[W]e do not agree that the height markings in Cikora's photograph waved a red flag in front of Hernandez and Hudson."); *see also Williams v. Weldon,* 826 F.2d 1018, 1021 (11th Cir.1987) ("[S]imply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where, as here, the other individuals in the lineup had roughly the same characteristics and features of the accused.")

suggestiveness, and she has failed to do so.[19]

Moreover, even if this were not the case, Lawson's claim must fail because she cannot show that the photo array was unreliable. In examining whether the an identification procedure is unreliable, courts consider five factors, but look to the totality of the circumstances.[20] The factors include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation.[21]

The totality of the circumstances in this case demonstrates the identification based upon photo array is reliable. Both witnesses who identified Lawson had seen her for a one and a half to two hour period while the crime was taking place inside a well-lit store and on two sunny days. On the other hand, the person who did not identify her, was ringing up sales transactions and conceivably could have been distracted. Additionally, both witnesses who identified Lawson were unequivocal in her identity, using words such as "this is the female I saw" and "I saw this lady."

Lawson argues the eleven day gap between the crime and the identification makes the identification unreliable. This is not correct. While it is preferable to have an

---

[19] *United States v. Hill,* 967 F.2d 226, 230 (6th Cir.1992).

[20] *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

[21] *Id.* at 199.

immediate identification, eleven days is completely acceptable.[22] The passage of time has been found to be a relevant factor when the recalled event occurred forty years prior,[23] but not when the time lapse was a "routine" one of "merely" six years.[24]

Finally, Lawson goes to great lengths in questioning the reliability of the identification because "cross-racial" identification issues. Lawson's argument, while not explicitly noting it, however, requires expert testimony. If Lawson plans to rely on this sort of testimony, then she will need to designate an expert. Lawson, however, has neither identified an expert, nor provided to the Government any expert report on the issue of cross-racial identification, as is required under Fed. R. Crim. P. 16. Citations to law review articles are insufficient. In order to evaluate properly Lawson's argument on this issue–and consequently evaluate what defenses to raise (for example, a *Daubert* defense)–the Government and the Court needs an expert report.

The United States understands that the defendant was presented the proffered evidence only on the eve of trial at the beginning of November. But, by the date of the hearing on this issue, Lawson will have known about the issue for nearly two months. She should not be permitted to designate an expert at the last minute on complicated issues.

Furthermore, under existing Eleventh Circuit case law, even if the Court were to

---

[22] *Compare Biggers*, 409 U.S. at 201(holding seven month delay acceptable under the totality of the circumstances).

[23] *See Krist v. Eli Lilly and Co.*, 897 F.2d 293, 297-98 (7th Cir.1990)

[24] *See Curry,* 977 F.2d at 1052.

permit her to designate an expert, that expert would not be permitted to testify. While the Eleventh Circuit has recognized that other Circuits have admitted expert eyewitness identification testimony in limited circumstances, (including "cross-racial identification"),[25] it has not wavered from its long-held position that expert eyewitness identification testimony is per se inadmissible.[26] In fact, in two recent Eleventh Circuit cases, defendants have requested that the Circuit revisit this position in light of *Daubert* and other recent Supreme Court evidentiary cases.[27] The Eleventh Circuit has rejected that request and maintained its per se rule.[28]

### C. Rule 701 Is Not Applicable on This Issue.

There is no reason to exclude identification witnesses under Fed. R. Evid. 701. Under Rule 701, lay opinion testimony may be introduced in certain circumstances. As relates to identification, lay opinion testimony issues usually arise when a party would like to have a witness identify the defendant from a photograph or video. That witness, however, will have no personal knowledge of the events that took place in the photograph or video. Such testimony is usually only permissible if there is some basis for concluding that the witness will be more helpful in identifying the defendant than the jury would, like

---

[25] *United States v. Smith*, 122 F.3d 1355, 1357 (11th Cir. 1997).

[26] *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992); *United States v. Thevis*, 665 F.2d 616, 641 (5th Cir. Unit B 1982).

[27] *Smith*, 122 F.3d at 1359; *United States v. Smith*, 148 Fed.Appx. 867, 872 (11th Cir. 2005).

[28] *Id.*; *see also United States v. Culotta*, __ F.Supp.2d ___, 2006 WL 1669796 (M.D. Ala. 2006) (Fuller, C.J.), *aff'd*, 99 Fed.Appx. 881 (11th Cir. 2006) (table).

if the defendant was wearing a disguise in the photo.

In this case, however, the Government does not intend to introduce any lay opinion testimony from any of the Sneakers employees. Instead those witnesses will testify from their own memory. Thus, Lawson's argument and citations on this issue are inapposite.

### III.  Conclusion

The proffered 404(b) evidence should be admitted. It is probative of Lawson's intent to steal and her conspiring with the intent to steal–an issue that Lawson herself has noted is the cornerstone of her defense. There is no legal or factual reason that should prevent the evidence's admission.

Respectfully submitted this 20th day of December, 2006,

                                             LEURA G. CANARY
                                             UNITED STATES ATTORNEY

                                           /s/ Christopher Snyder
                                           CHRISTOPHER A. SNYDER
                                           Assistant United States Attorney
                                           One Court Square, Suite 201
                                           Montgomery, AL 36104
                                           Phone: (334) 223-7280
                                           Fax: (334) 223-7135
                                           E-mail: christopher.a.snyder@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney