IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

**DEFENDANT TANESHIA M. LAWSON'S RESPONSE TO UNITED STATES'
RESPONSE TO MOTIONS IN LIMINE REGARDING 404(b) EVIDENCE**

**COMES NOW** the Defendant, Taneshia M. Lawson ("Ms. Lawson"), by undersigned counsel and respectfully makes this reply to the Government's Response to her Motion to prohibit the Government from introducing, in any opening or closing statement, argument, evidence, opinion, exhibit, photograph, video, or testimony, the proffered 404(b) evidence and/or any cross-racial identification of Ms. Lawson as the alleged perpetrator of the offense of passing a "bad check" at Sneakers in Auburn, Alabama, in October 2006.

**The Government Mis-characterizes the Challenged 404(b) Evidence**

In the portion of the Government's Response entitled "Background," the Government mis-characterizes the 404(b) evidence being challenged in this case, and appears to confuse the two separate events shown in the Sneakers store video surveillance which it wishes to introduce.

The video surveillance shows a portion of the activity in the store on two separate days: October 21 and October 22. On October 21, the video shows an African-American woman buying shoes. On October 22, an African-American woman is visible shopping but not buying anything; other customers are visible; and a man purchases shoes. On information and belief, the government contends that the man present on October 22 paid for his shoes with a stolen check and that the

woman shown on October 21 paid for her shoes with a separate stolen check.  The accounts on which the two checks were drawn are unrelated to each other in any way.

The women shown on October 21 and 22 are dissimilar in appearance.  Moreover, on information and belief, one of the accounts on which a purportedly stolen check was drawn, is owned by a woman who is a heavy set African American woman who looks similar to the woman presenting a check at the Sneaker store on the October 22, 2006 video surveillance.  In addition, this woman matches the description of the woman on the October 22, 2006 video surveillance that was provided to the Auburn Police Department by the Sneaker's store manager, Adam Cook . (See documents Bates stamp numbers 117, 119).

The Government asserts in paragraph three (3) of its Response (D.E. 169), that Sneakers' employee Nicki Thrailkill ("Ms. Trailkill") "said she was able to observe her [referring to Ms. Lawson] in the store for approximately one and one half hours.  Thrailkill also noted that Lawson came in around the same time as the man, who cashed the stolen check that day." (D.E. 169, p. 2).  However, the only statement by Ms. Thrailkill produced by the Government is a handwritten notation on a photo line-up, in which Ms. Thrailkill states "I saw this lady in our store on Sunday October 22nd [sic] She entered the store **around the same time frame the transaction took place**.  She was in the store for about an hour & a half on Sunday (using our store phone, etc.)" (Bates stamped 107)(emphasis added.).  This statement thus does not assert that Ms. Thrailkill observed Ms. Lawson for ninety minutes or that Ms. Lawson entered the Sneakers store at the same time as the entry by a man who later passed a stolen check.  Ms. Thrailkill's only observations are consistent with innocent and lawful behavior - shopping in a shoe store for about an hour and a half on a Sunday.  Ms. Thrailkill did not state that she observed the man and woman together.

In paragraph four (4) of the Government's Response, the Government asserts that a security video, "while slightly grainy" from Sneakers on October 21, 2006 "shows a pregnant African-American woman, wearing a bulky dark colored sweatshirt/large jacket." (D.E. 169, p. 2). However, the security video being referenced by the Government actually shows a heavy set African-American woman wearing a bulky dark colored sweatshirt and large jacket. The woman's weight, the bulky clothing she is wearing, and the grainy quality of the video prevents the viewer from determining if the woman in the video is pregnant. Moreover, as government counsel noted in open court, the image is not a "match" with Ms. Lawson.

In paragraph five (5) of the Government's Response, the Government asserts that the October 22, 2006 video surveillance "shows Lawson in the store at the same times as the man who was presenting the fraudulent checks." (D.E. 169, p.3). Whether or not Ms. Lawson was in the Sneakers store on October 22, 2006, is a matter still in dispute. There is no question that several people are shown in the store at a time frame which the government has identified as coinciding with the presence of a man who passed a stolen check. Mere presence at the time of a crime is not a sufficient nexus to justify presentation of the collateral act under F.R.E. 404(b).

In paragraph six (6) of the Government's Response, the Government asserts " The Auburn sneakers store is over 50 miles away from Lawson's residence in Montgomery. . . . Lawson was approximately six months pregnant when these stolen checks were fraudulently presented at Sneakers. Neither of the victims, whose checks were stolen, however, are pregnant."(D.E. 169, p.3). Stating these facts within one paragraph does not make them connected, or relevant to the 404(b) determination to be made by the Court. Neither of the surveillance videos provided by the Government show footage of how any one shown in either video view leaves the Sneakers store

premises, other than by walking out the front door of the store.

In paragraph seven (7) of the Government's Response, the Government asserts " One employee of the store, Simone Hicks, who was working in the Sneakers store on October 21, 2006, and running the cash register, did not identify Lawson from the same photo line up. Hicks, however, is a high school student, which is between the age of 16 and 18 years old."(D.E. 169, p.3). What the Government fails to mention is that Ms. Hicks is the **only** Sneakers store employee who had any direct contact with the woman who made a purchase with an allegedly stolen check. Further, neither her age nor her status as a high school student makes her identification less reliable.  As Ms. Hick was the only person to take the check from the woman and match the woman's face to the driver's license photo identification presented to Ms. Hicks at the time that the check was presented, Ms. Hicks' identification is more likely to be the most reliable of all of the other Sneaker's store employees identifications.  Moreover, Ms. Hicks' identification is not a cross-racial identification, since both Ms. Hicks and the suspects being viewed are African-American.

### The Prejudicial Nature of the Proffered 404(b) Evidence Outweighs Its Probative Value

Evidence of an extrinsic, uncharged offense is "admissible provided that the government (1) has sufficient proof that the defendant committed the prior act, and (2) can show that the probative value of the evidence is not substantially outweighed by it undue prejudice." *United States v. Baker*, 432 F.3d 1189, 1205 (11th Cir. 2005) (holding that a district court had erred when it allowed the admission of evidence that two of eleven defendants charged with participating in a drug distribution conspiracy had committed an unrelated homicide and an act of domestic violence).

Contrary to the Government's assertion, there is  not sufficient proof that Ms. Lawson committed the offenses forming the basis of the challenged evidence. The Government asserts that

4

its video evidence shows a woman matching Lawson's description at the exact time that stolen checks were cashed. (D.E. 169, p.5). To the contrary, the Government's video evidence shows a woman who does not fit Ms. Lawson's description paying for shoes with a check on October 21, 2006, and a man paying for shoes with a check on October 22, 2006. The only similarity between Ms. Lawson and the woman passing a check on October 22, 2006, is that both are African American women. The eyewitness' reported description of the woman who passed the stolen check is substantially different from Ms. Lawson in height, weight and age. Indeed, the woman was described as being around age 45 years old – ver twenty years older than Ms. Lawson.

Additionally, at least one of the African-American women, who the Government contends fits Ms. Lawson's description and was inside of the Sneakers store at the same time as a man passing stolen checks, is herself doing nothing illegal. This woman merely looks at shoes, tries on a pair of shoes, uses the store telephone and then leaves the store. She neither enters the store nor leaves the store with the man passing the stolen check.

Further, on information and belief, at least one Sneaker's store employee would testify that while she observed this man in the store on two consecutive days, she did not see any woman come to the store on those same two days. In particular, on the second day, she did not believe that the man in the store was "with" or in the company of any woman, although he later spoke to another female customer.

Any probative value of this evidence would be outweighed by the substantial danger of unfair prejudice. "Extrinsic evidence of other crimes, wrongs, or acts is inherently prejudicial to the defendant." *United States v. Baker*, 432 F.3d 1189, 1205 (11th Cir. 2005) (citing *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir, 1978)). "One of the dangers inherent in the admission of

5

extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense." *Id*.

The prejudicial impact of allowing a jury to infer that Ms. Lawson was somehow involved in the passing of stolen checks at a Sneakers store, from the Government's evidence that an African-American woman fitting Ms. Lawson's description was inside a store at the same time as a man who was passing stolen checks, far outweighs the probative value of the Government's evidence. *Compare United States v. Shavers*, 615 F.2d 266 (11th Cir. 1980)(finding that where a defendant was convicted of assault with deadly weapon, evidence of a previous incident in which the defendant threatened a co-worker while using a knife had a prejudicial impact which outweighed any probative value, because the evidence permitted a jury to infer that the defendant was violent person with a propensity to use knives against people). "Additionally, extrinsic evidence 'may lead the jury to conclude that, having committed a crime of the type charged, the defendant is likely to repeat it.' Either inference may be inimical to the long-standing rule that propensity to commit crimes should not be the basis of a conviction." *Id.*

The Eleventh Circuit has "generally held that if the extrinsic act requires the same intent as the charged offenses *and if* these acts are proximate in time to the charged offense, then the extrinsic act is highly probative." *Id.* (emphasis in original). However, those circumstances are not met here.

Ms. Lawson's pending charge involves an alleged conspiracy between three women cashing one person's stolen Social Security checks at a pawn store in Montgomery, Alabama in October 2003. The Government's 404(b) evidence refers to one woman using a stolen check to buy shoes at a Sneakers shoe store in Auburn, Alabama on October 21, 2006 and one man using a different stolen check to buy shoes at the same Sneakers shoe store in Auburn, Alabama on October 22, 2006.

The Government's 404(b) evidence does not appear to involve a conspiracy between two or more people to cash stolen checks. The Government's evidence does not establish any connection between the man and woman cashing the checks at the Sneakers store on the two separate dates. Further, the Government does not contend that its 404(b) evidence is evidence of a continuing conspiracy between Ms. Lawson and the co-defendants charged in this case.

In addition, the events of the 404(b) evidence are not proximate in time to the charged offenses; the conduct charged in this indictment occurred in October of 2003 and the offenses of the 404(b) evidence occurred in October of 2006.

The lack of similarity in the charged offense in this case and the extrinsic offense evidence being offered by the Government makes the 404(b) evidence wholly irrelevant.

> The relevancy of extrinsic evidence under *Beechum* is a function of the degree of similarity between the extrinsic act and the offense charged. In this regard, the extrinsic and the charged offense must have more than a mere characteristic in common; the common characteristic must be "the significant one for the purpose of the inquiry at hand." 582 F.2d at 911. Thus, where the issue for which the extrinsic evidence is admitted is the defendant's intent to commit the offense charged, the relevancy of the "other act" evidence derives from the defendant's having possessed the same state of mind in the commission of both the extrinsic act and the charged offense. *Guerrero*, 650 F.2d at 733; *Beechum*, 582 F.2d at 911. *United States v. Dothard*, 666 F.2d 498, 501-502 (11th Cir. 1982).

The other act evidence being offered by the Government here is so dissimilar from the charged offenses, that the Government has failed to demonstrate how Ms. Lawson could have possessed the same state of mind in the commission of both the extrinsic act and the charged offense.

If the woman on the October 22, 2006 video surveillance could be shown to be Ms. Lawson, then the Government would have only proved that Ms. Lawson went inside the Sneakers store, looked at shoes, tried on shoes, used the store phone, and then left the store without making any

purchases in October of 2006. This in no way shows that Ms. Lawson had the intent to <u>conspire with others</u> to steal government checks from a mail box and then cash those checks at a pawn shop in October of 2003. Similarly, if the different woman in the October 21, 2006 video surveillance could be shown to be Ms. Lawson, then the Government will have only shown that Ms. Lawson, on her own, intended to buy shoes with a stolen personal check in October of 2006. This evidence would not show that Ms. Lawson had the intent to <u>conspire with others</u> to steal government checks from a mail box and then cash those checks at a pawn shop in October of 2003.

The only characteristic in common between the offense of the current charges and the offense involved in the challenged 404(b) evidence is that checks were stolen and, in one way or another, used. This single characteristic is not sufficiently significant for the purpose of the inquiry at hand. *Dothard*, 666 F.2d at 501-502. Therefore, the extrinsic offense evidence being challenged here is irrelevant, highly prejudicial, and as such is inadmissible.

### The Secret Service Photo Array Procedure was Unnecessarily Suggestive

As previously argued, on information and belief, at least one of the Sneakers store employees will state that she felt that the police officers who displayed the photo line-up to her were attempting to influence her identification and to pressure her to make an identification.

> In examining the procedures used by law enforcement officials, the courts consider not only the officer's comments in presenting the array, but also the manner of presentation. *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2nd Cir. 1990), including whether the witness's initial identification was positive or tentative, whether there were repeated showings of the selected photograph in isolation, **whether the officer's conduct influenced the identification by conducting a show up or pressuring the witness** to take additional looks at the suspect, see *Jarrett v. Headley*, 802 F.2d 34, 41-42 (2nd Cir. 1986) (citing cases), and whether the officer made suggestive comments prior to the identification. *United v. James*, 415 F. Supp. 2d 132, 166 (E.D. N.Y. 2006)(emphasis added).

In response to the Defendant's motion entitled "Defendant Taneshia M. Lawson's Motion to Exclude Government's Proposed Cross-racial Identification, and Citations of Authority" ("Motion to Exclude")(D.E. 164), the Government asserts,

> Finally, Lawson goes to great lengths in questioning the reliability of the identification because 'cross racial' identification issues. Lawson's argument, while not explicitly noting it, however, requires expert testimony. If Lawson plan to rely on this sort of testimony, then she will need to designate an expert. Lawson, however, has neither identified an expert, nor provided to the Government any expert report on the issue of cross racial identification, as is required under Fed. R. Crim. P. 16.

Ms. Lawson's Motion to Exclude was filed on December 11, 2006. In paragraph thirteen (13) of that motion, undersigned counsel stated:

> On information and belief, an expert in eye witness identification would present testimony that cross-racial identifications are unreliable; that identifications by a white person of a black suspect are even more likely to be inaccurate; that the identification procedures used in the present case were suggestive; and that, based on the facts and circumstances of the present case, the identifications made by the white Sneakers employees of a black suspect are unreliable and are more likely to be inaccurate than accurate. (D.E. 164, p.7).

Thus, defense counsel provided notice that an expert on cross-racial identifications would be presented and described the expert's testimony. As acknowledged by the Government, "the defendant was presented the proffered evidence [regarding the cross-racial identifications] only on the eve of trial at the beginning of November." (D.E. 169, P. 10). Ms. Lawson's Motion to Exclude was timely filed on December 11, 2006, in compliance with the deadlines set by this Court in its Order entered on November 6, 2006. (D.E. 145).

### Cross-Racial Identification Testimony Should Not Be Admitted At Trial

The Government asserts that Federal Rule of Evidence 701 is not applicable to the issue of the exclusion of lay witness testimony concerning cross-racial identifications because the

Government's "witnesses will testify from their own memory." (D.E. 169, p. 12). However, Fed. R. Evid. 701 provides,

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) **helpful to a clear understanding of** the witness' testimony **or the determination of a fact in issue**, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. (emphasis added).

The 404(b) testimony that the Government intends to introduce in this case would be impermissible under Rule 701 as it would not be helpful to a clear understanding of either whether Ms. Lawson had the requisite intent to participate in the conspiracy currently charged in this case or whether Ms. Lawson passed stolen checks at a Sneakers store in October of 2006. The testimony should be excluded as irrelevant under Federal Rules of Evidence 401, 402, 403.

Additionally, the testimony will concern a cross-racial identification in which the white Sneakers employees did not deal directly with the African-American person they are attempting to identify and there is a contradictory identification by an African-American Sneaker's employee. These factors alone make the identification testimony unreliable, unhelpful to a jury, and inadmissible under Fed. R. Evid. 701.

Defense counsel will provide the Court with a copy of the security video at issue, as an Exhibit to this pleading.

**WHEREFORE**, the Defendant respectfully requests that this Motion be granted.

Respectfully submitted,

s/Christine A. Freeman
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson

        Federal Defenders
        Middle District of Alabama
        201 Monroe Street, Suite 407
        Montgomery, AL 36104
        TEL:  (334) 834-2099
        FAX:  (334) 834-0353
        E-Mail: Christine_Freeman@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

        **s/Christine A. Freeman**
        **CHRISTINE A. FREEMAN**
        **TN BAR NO.: 11892**
        Attorney for Taneshia M. Lawson
        Federal Defenders
        Middle District of Alabama
        201 Monroe Street, Suite 407
        Montgomery, AL 36104
        TEL:  (334) 834-2099
        FAX:  (334) 834-0353
        E-Mail: Christine_Freeman@fd.org